Good morning. My name is Scott Levy. I represent the relators Nyoka Lee and Talala Meshuja. Ms. Lee is 71 years old. She was a recruiter at Corinthian's San Francisco and at some point San Jose campuses for five years until 2005. Her brother Mr. Meshuja was a test proctor for eight years at the San Jose campus. He was employed as an independent contractor. His office was situated in the admissions department. He tested all of the ability to benefit students, which is a euphemism for high school dropouts who were tested to be admitted to the school. Initially I'll point out the basis of the allegations that the school paid its recruiters solely based on success and security enrollments are documents called flash reports, ad-rep flash reports, which contained the number of leads given to each recruiter at a campus and the percentage of those leads that were converted into those reports through 2005. Defendants submitted the declaration of Corinthian's marketing director, vice president of marketing, Roger Van Duenen, who said these reports were in fact trade secrets, never publicly disclosed, and that they were in use in 2013. So in terms of the court's analysis, whether the court finds those ad-rep flash reports are sufficient to support the basis of compensating recruiters solely on success and security enrollments, it is beyond dispute. They were utilized by the school from 2000 through at least 2013. Defense counsel provided her personal affidavit saying that she had confirmed these reports had never been publicly disclosed, that they've been maintained as a proprietary trade secret by the school. So in terms of... So what was the source of the knowledge then of the relators? My sense is that they did not have any private access to this information. Your Honor, every week the director of admissions at each campus received a flash report and it showed how many leads each recruiter got and how many leads they converted to the recruiters every week. And that's how Ms. Lee came to possess them in the course and scope of her employment. And the defendants have carefully chained out the chain of custody on these reports as being their documents that they provided to the relator during her employment. I'm not sure where the documents, the information not being available to the relators because clearly the relator produced them in this case. And the affidavits of both defense counsel and of the vice president of marketing of Corinthian established that those are their documents. My understanding of this case is that the problems with Corinthian were not only widespread and actionable in the sense that Corinthian was doing bad things, but that they're also very widely known. Whether that's to say, I'm still having trouble with this public disclosure bar. Well, okay. We've been up for a previous panel and at that point the issue was whether the employment contracts which contain enrollment quotas for each level of recruiter, gone from 40 enrollments to 40 a month. And so the claim was that those enrollment quotas in and of themselves would be sufficient to violate the prohibition against paying recruiters base indirectly and directly on their success in securing enrollments. The Ninth Circuit in that first appeal said enrollment quotas are not false statements within the meaning of the False Claims Act. And so they do not support a false statement. So the court said you will need to provide evidence that in addition to enrollment quotas that shows that the school compensated these recruiters solely based on their success in securing enrollments. So the any allegation that related to enrollment quotas would not be considered a violation of the False Claims Act. It would not be a quote false statement under the False Claims Act. So if you... The point at which I'm rather more sympathetic to your side of the case is I'm somewhat concerned by the attorney's fees award. As I understand it, the district court awarded attorney's fees for the entire course of litigation. That's correct, Your Honor. So help me understand why that was a mistake. Well, first of all, the district court found that that the relators filed were, quote, spurred to file suit after a settlement in a similar case by the University of Phoenix, which I think was $68 million and the relators share was $19 million. That settlement was, in years after the suit was brought. That settlement was December 2009. This suit was brought in March 2006. There was absolutely no way the relators could have known about a settlement three years after the suit was brought. So the district court's factual findings are just chronologically not possible. That's the entire basis of... Yeah, it occurs to me that there may be a basis for an attorney's fee award, not for the entire course of litigation, but for litigation beginning with the first amended complaint. That is to say, the first amended complaint may be on shakier ground than the earlier complaint. Could you respond to that? Well, and so I just started with the court and said the direct flash reports that my client produced were from the period of her employment through 2005 and Corinthian's vice president of marketing said those reports came from Corinthian's proprietary database and that those are currently being used at the time of the affidavit. So that's why I initially laid that foundation so the court does not get caught up in this false argument that there is some difference in the allegations in the original complaint and in the amended complaint. Certainly, and they've admitted this, these are false. Okay. The second part of the case is the district court held that the disclosure, the public disclosure, had found that Corinthian inoculated the auditors because any public disclosures to the school would automatically insulate the auditors from liability. The problem with this is that the U.S. government is the biggest contractor in the U.S. and all of these government programs require an audit under government auditing standards. These are statutory audits that are independently required, so the auditors in all cases where there is some allegation or rumor or innuendo about a company, the auditor can always claim it should be exonerated because that information was publicly known. The consequences to the government, not just in the for-profit education sector, is that you're eviscerating the auditor's responsibility. I'm going to reserve my reigning time until after the the appellee speech. Thank you. May it please the Court. Blanca Young on behalf of the individual defendants, Jack Massimino and David Moore. I know I'm listed on the pleadings as counsel for Corinthian. I don't represent Corinthian anymore. They are dissolved and don't exist. I plan to take, unless the court has a different preference, 12 minutes to address issues common to all of the appellees and then Mr. Hubbell will spend the remainder of the time addressing issues specific to E&Y. So you are representing Massimino and Moore? Correct. That's correct. Your Honors, the the relators have admitted on the record that they have no personal knowledge of the fraud that they have alleged. None. So where did their allegations come from? They were borrowed straight from the public record. The public record told the relators and the government everything that they needed to know about the fraud that was alleged in their complaints. And this is true whether the court looks at the original complaint, which is what controls the jurisdictional analysis as a matter of law, or whether it looks at the amended complaint, which didn't add much that wasn't already out there in the public domain. I'm trying to save this not from the result on the merits, but from the award attorney's fee, so I understand where the Is it a plausible argument that someone who works for the company understands the company's procedures, is in a better position than an outsider to understand what is publicly revealed, to interpret it to someone, and so on. So in a sense it's only publicly revealed documents that are the basis, but it requires an insider to understand and make the proper inference. So when you say they have no direct knowledge, that may be right, but they do understand the company well enough to understand the information and draw inferences that others might not be able to do. Well they may, but if the allegation is already a matter of public record, the bar is triggered, and then the court moves to the second prong, which is whether the relators are original sources. And to be original sources... Yes, I understand that. And so what I'm asking you, I mean, what I'm really worried about in this case is the award of attorney's fees. Okay. And the award of attorney's fees is premised upon frivolous litigation, harassing litigation, entirely unjustified litigation, rather than litigation that loses. Correct. That's correct. And here I think there is objective evidence in the record that that in fact is what happened. We have an attorney who tried to bring five cases just like this one against similar schools and failed, and then he went and found, I don't know how specifically they were identified, but he found two people who worked for the school, and just on the premise that they were employed by the school alone, signed them up to put their names on a lawsuit that made allegations that were identical to what was in the public record about Corinthian specifically. And had he simply asked them the questions we asked these relators at their depositions, it would have been evident that they didn't actually know of any fraud occurring at the school. Yes, they had insight into how the admissions department worked. One of them worked at the school for a period of time in admissions. The other didn't. He was a test proctor and had no responsibility for admitting anybody, and he had no insight into how admissions representatives were compensated other than what his sister told him. But the one relator who worked in the admissions department, when we went through and asked her how she was compensated, she thought her compensation related to, she didn't know what factors went into the evaluations forms that were filled out. And she actually thought that her job responsibilities and what she understood she was being evaluated on were things in addition to her enrollment numbers, which directly contradicts the allegations that were in the complaint. And by the way, those allegations weren't even in the original complaint. They didn't get added to the case until after this court agreed that the original complaint didn't even have enough facts in it to state a plausible claim for relief. And then the allegation that this was a sham compensation system was just again borrowed and copied almost word for word out of the public record. Um, and and we know that Relators Council was aware of those intervening disclosures because they were cited to the court. So I think the Rockwell case is a good example of that's the Supreme Court case on original source. And it's a good example of the rule that just because you are employed in a certain place and work in a certain department that happens to be an issue at issue, that's not enough to give an attorney practitioner in this area any confidence that the person qualifies as an original source. The other point I want to make is that Ms. Lee, who was the admissions representative, the relator, ended her employment, I think it was in March or May of 2005. The allegations in the original complaint say that in 2005 and following, Corinthian committed incentive compensation fraud. So on its face, the allegations don't even align with the time period during which Ms. Lee was actually employed in admissions. And when we asked her, you know, when did you get raises? And when did you get salary increases and promotions during your tenure at Corinthian? That all happened prior to 2005. So this is not a situation where the relators had, you know, direct and independent knowledge of any relevant time period. And I think the the district court correctly found when they tried to amend their complaint to capture that earlier time period, it just couldn't relate back. Um, so so the public disclosures here very clearly told the relators and the rest of the world everything they needed to know to make the allegations that showed up in the original complaint and to make the allegations that showed up in the first amended complaint. So, um, you know, again, our position is that the original complaint controls the analysis is a matter of law. That's the time of filing rule that this court has applied in the Morongo case. It's applied it in the in the public disclosure of False Claims Act context in the Newsom case. The original complaint basically repeats what was already in the securities class action litigation that was filed against Corinthian, which has an entire section titled, quote, false statements concerning payment of incentive compensation and quote, it makes the same allegation about a corporate wide practice to pay raises and bonuses to recruiters based on meeting their enrollment quotas. And this argument that, you know, the Ninth Circuit found that enrollment quotas are legal is just wrong as a matter of law. They are not legal if they are the only basis for awarding compensation or giving a raise to recruiter. Um, and that is what the court actually held in Lee. Um, so the original illegal is the only basis. They are illegal. They are not legal if the only basis for giving somebody a raise is whether they meet an enrollment quota. Um, but they can be used as a factor. They can be. So they, under safe harbor regulations that were in effect until 2011, they could be a factor. Um, as the problem with the initial complaint in this case is that it alleged that admissions representatives had to meet quotas in order to get raises. But there, it also cited the compensation plan that Corinthian used, which said, in addition to that, you have to get a good performance rating. And there were no plausible facts in the record from which you could infer that, you know, you get about how you get a good performance rating. So that could be, um, based on non numerical enrollment criteria, or it could be based on other factors that would make the rule compliant. Um, so they were given a chance to, uh, to amend their complaint. And then when they did, they just borrowed from public disclosures that said, um, there was an entire Department of Education rulemaking in which this very safe harbor was revoked because the department was concerned that schools were using the safe harbor as a front to hide non compliant practices. So they were doing things like having plans that on paper looked like they were evaluating factors in addition to enrollments, but in practice they were not. And the same language just gets imported into the relators first amended complaint. Um, but those allegations were foreshadowed even before the original complaint was filed by the securities class action plaintiffs, who in their complaint talked about, um, you know, that that Corinthian was giving raises and bonuses to recruiters based on enrollment quotas and doing so in the context of a corporate culture in which, quote, rules were meant to be broken. And a stated policy of no lying, cheating or stealing was a quote front for the very conduct that it purported to prohibit. And so, you know, if you're the government with those allegations in hand, you would not be doing your job if you said, Well, I just want to take a look at your written plan and not look behind it to see what you're doing. Because this is a corporation that's alleged to be breaking its own rules as a matter of its corporate culture. Um, I want to talk briefly about the flash reports that Mr Levy mentioned. Flash reports are not mentioned in any of the complaints. The relators filed not in the original complaint, not in the amended complaint. They are mentioned, however, in the public disclosures. In the securities class action complaint, there are paragraphs and paragraphs in their complaint about how Corinthian has a program that sophisticated information system that tracks all kinds of things from lead flow to starts. And then they quote from confidential witnesses who held positions similar to Relator Lee, who talk about how they described their job responsibilities as including and preparing and circulating weekly flash reports with enrollment data to senior executives and another confidential witnesses who says yearly raises were based on whether enrollment quotas were met. And this witness was also responsible for sending weekly flash reports to corporate managers. So nothing that the relators are saying here is new. I want to spend just a few minutes talking about my individual clients, Jack Massimino and David Moore. They are both mentioned by name in the securities class action complaint. David Moore is a defendant in that case, and Jack Massimino is identified as his successor and all the conduct is alleged that's alleged to have happened during David Moore's tenure is alleged to have continued. Um, and then the relators, when we asked them about my clients at their depositions, thought they that they both worked for University of Phoenix, which is a school. Um, this is exactly the kind of parasitic lawsuit that the public disclosure bar is meant to preclude. Thank you. May it please please the court. Robert Hubble. I represent a Pele and defendant, Ernst and Young. I would like to make three brief points as they skip ahead and address Judge Fletcher's concern about the sanctions that were awarded here. So the three points that I would like to discuss in my time is the nature of the claim against E. Y. And how that claim is dependent on the claim against Corinthian. Second, I would like to discuss how the nature of that claim affects the analysis of the public disclosure as to E. Y. And third, I would like to discuss why the claim against E. Y. As auditor makes it virtually impossible that these relators can be original sources as to E. Y. Which brings me to Judge Fletcher's question, which I think generally went to the question to the notion that perhaps insiders might be able to look at public disclosures and have a different assessment of those public disclosures. And how does that relate to sanctions? So Ernst and Young was the financial statement auditor for Corinthian. These relators works worked in the admissions department and as a test proctor, they had absolutely no interaction with Ernst and Young. In I think a fair characterization of their testimony is that they were surprised to see that Ernst and Young showed up as a defendant here. Relator Suja indicated that his knowledge of Ernst and Young was based largely on Wikipedia and Google searches that he had conducted. In the original complaint, relators simply got it wrong as to what E. Y.'s role was. They alleged that E. Y. was the compliance auditor. It was not. There was a different auditor who served that role. That auditor's compliance opinion is in the record. Ernst and Young instead was the financial statement auditor. And it was not until the first amended complaint that relators finally conceded that indeed Ernst and Young wasn't the compliance auditor, but they simply pivoted and said, but it should have been. So it doesn't really matter apparently what the facts are. Whatever is necessary to allege a complaint that they believe can withstand a motion to dismiss is something that these relators apparently were willing to do through their counsel. Which brings us to, I think, the issue that particularly bothered the district court. These relators testified presumably truthfully at their deposition about their knowledge and their lack of knowledge. Thereafter, a affidavit was submitted to the court that contradicted. It didn't explain. It did not enlarge their deposition testimony. It contradicted their deposition testimony. Now, in the court's order, the district court cited a number of other vexatious type activities. And I agree with Judge, Your observation that much of this post dated the filing of the first amendment complaint. But I believe Mr Levy said that the only basis for the sanction was some misunderstanding about whether relators were spurred by a specific lawsuit. That is just simply belied by the district court's order, citing numerous instances of conduct by counsel that it found vexatious and in bad faith. Let me briefly address the nature of... I lost track in all of that. I was trying to listen carefully to what you were saying. But the thing you said you're going to start off with is to address the Judge Fletcher's question about the sanctions. I never got the point. I have no idea what you said. Why don't you try to say it in plain English in less than six sentences? Yes. So the question that I understood Judge Fletcher was asking was whether these relators had any particular knowledge about the public disclosures that might allow them to bring something new to the table and whether that somehow bore on the question of sanctions. And in my point, Your Honor, was that as to Ernst & Young, they had absolutely no knowledge about the public disclosures and therefore their allegations are baseless. In addition, they presented affidavits to the court that contradicted their deposition testimony. That has nothing to do with their status as insiders and whether the award of sanctions is appropriate. I'm not sure I understand that. I mean you sort of threw that in. What does the fact that Mr. Levy, as Relator's Counsel, submitted to the court an affidavit which the court believed was submitted in bad faith because the affidavit itself contradicted their deposition testimony? I'm a little bit at a loss here. Sometimes you have contradictory facts in a case and sometimes you even have contradictory statements from the same witnesses. People forget, people get confused. I mean it doesn't look good at trial if you have quite understand what that has to do with bad faith. The district court's determination was that the purpose of the affidavit was to refute the sworn testimony of the Relators at their deposition at which they testified that there were multiple bases for their compensation and their bonuses. The affidavits contradicted that by saying that the sole basis of their bonuses was whether or not their success in recruiting students to Corinthian. That's just a flat contradiction. I got it. You said contradiction now six times. So what? So they contradicted. I mean you've never seen a case. Is this sort of news to you? You've seen a case where people testify something at the position and then it turns out they want to take it back. They want to take it back because they're lying. They may want to take it back because they were confused. They may want to take it back because they didn't understand the question. You know for whatever reason they want to take it back and they say you know we said this we're not going to say that. And it doesn't look good at trial. If you go to trial and you put those two statements on the jury that certainly undermines the credibility. What does that have to do with bad faith? Every time somebody puts in contradictory statements is that bad faith per se? No it is not your honor. Okay so what is it about this case that makes that bad faith? The district court on the basis of all of the conduct before it believed that this was part of a pattern of conduct by counsel which was designed simply to in bad faith prolong this litigation when there was no basis for the litigation. And it viewed the affidavit as one of the items that contributed to its conclusion that that occurred in bad faith. So standing alone you concede it's not a proof of bad faith? It they may very well not be your honor. So we have to sort of tie it into or find that the district court didn't abuse the discretion tying it into other aspects of the case. That's your claim? Yes. Okay I think I understand that. Your honor let me simply close by saying as the district court found the claim against Ernst and Young is entirely dependent in the first instance on the claim against Corinthian and if the claim against Corinthian is barred so should the claim against Ernst and Young. Thank you. Okay you had some time left for rebuttal. I just want to point out again as I started the defendant has has filed these has moved to file these ad rep flash reports under seal. Counsel and the vice president of marketing have have traced the chain of custody of the documents that were later produced in this case and they have said they were never publicly disclosed. Congresswoman Waters wrote to the court and said there are 30 state AGs investigating this company. I urge the district court do not seal these documents. The Illinois Attorney General sent me a subpoena because they wanted the documents. Corinthian immediately moved to seal the flash reports. Let me explain what a flash report is. Let's suppose you have two recruiters and each one of them recruits 15 students. One recruiter got 20 leads and so he converted 75% of his leads to enrollments. The second recruiter who also got 15 recruitments enrollments he got 25 leads so his enrollment. The original panel said you have to show us that this good versus excellent rating depends on enrollment. The lead to conversion ratios stated in the in the flash reports are those reports. It's not just based on the testimony of Ms. Lee. To say that she didn't have knowledge after the have filed these affidavits establishing those are the company documents and had them placed under seal is simply just it's not reasonable. As far as the public disclosure, the securities class action case came up to the Ninth Circuit. It was defended, Corinthian and the class action lawsuit. So they had intimate knowledge of that class action lawsuit. It took them five years to raise this public disclosure argument. They didn't they didn't they filed two sets of motions to dismiss. The case went up on appeal. A panel of this court examined the claims. When it was remanded back, defendants didn't file a motion to dismiss on public disclosure grounds. They filed a new round of motions to dismiss. The brief filed in this court in the securities case, it discussed a that the financial aid people were telling the students inflate the number of dependents you have because it will increase the amount of student aid you can you can get here. So that was that was eventually uncovered. The price of the stock dropped and Milberg Weiss filed a 300 page complaint saying this was a massive fraud. The defendants argued and that is the same defense counsel who is telling you this is is publicly disclosed. They said after the discovery of the inflation of the enrollment of the dependents at the San Francisco State University, the DOE made no findings of fraud at all. So the court they argued other than this single isolated event, there was there was it said the continuing regulatory scrutiny only reinforces that the massive fraud alleged in the class action complaint is a fiction. Plaintiff does not now and cannot allege that any of these investigations or inquiries has ever revealed the sort of massive fraud that the plaintiff's claim is lurking just beneath the surface at Corinthian. These are the arguments they made in the class case and they prevailed on those arguments. This court dismissed it. As far as Ms. Lee's testimony, I don't want to bore the court, but this is in volume two, page 208. They're asking Ms. Lee how she was compensated. Once again, Blanca, Ms. Young, anytime you received a raise, it was because you had outstanding numbers for enrolling students. And I'm pretty sure I enrolled some students. And I got it because that's how you got raises. That was her years. So if she didn't know the basis of her raises, who would you go to to find out? So she again repeats this numerous times in her in her deposition. And I'm going to page 215. She says it again. You got compensated on how many years of promotion. Ms. Young, I understand that's what you believe. Ms. Young's argument was that there was a form that contained an evaluation of the recruiters. They gave them between one and ten points for record keeping and attire and their professionalism. Ms. Lee testified at the end of the year when she got her raise, her director of admissions made her sign this form. And they asked in her deposition, do you know what that form was used for? She said, I have no idea. But I was evaluated week in and week out based on ad rep flash reports, which showed the number of leads I converted to enrollments. So that was her testimony. If you look at her affidavit, it tracks exactly what she said in the deposition. The court struck that affidavit, but we filed pinpoint citations in the court. So the deposition testimony supports the allegations by themselves. The last thing I'll note, on the Ernst and Young sanctions, the court refers to paragraph 5 in the amended complaint. There's a quotation in paragraph 5 of the report that Ernst and Young did, a report on internal controls and compliance and, you know, with government auditing standards. Ernst and Young itself took judicial notice in both the district court and later in the circuit here that, you know, the judge is sanctioning me for Ernst and Young for preparing a report that Ernst and Young has itself obtained judicial notice from the court that that's what it prepared. The second, the most critical thing is, Ernst and Young has filed 100 pages of briefs in this case. These audits say they were under government auditing standards. This is not some abstract theory. Government auditing standards say they are two mandatory prerequisites to comply with government auditing standards. One, there has to be a compliance with laws, regulations, government contracts and grant provisions, and the other, there has to be an audit of internal controls so the government can actually determine that the money it's sending to various contractors throughout the country has actually gone into the projects it's appropriated for. The argument, again, that Ernst and Young is inoculated by any sort of supposed public disclosure, you are putting the federal government in a position they can never rely on an auditor's opinion when there is innuendo or some alleged unspecified public disclosure. Last thing, the United States Department of Justice filed an amicus brief in this case and said these relators provided information, original information of fraud that was not in the public domain. That's all I have. Thank you.
judges: Kozinski, W. Fletcher, Gould